UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 17-23381-CIV-WILLIAMS-TORRES

JOHN A. OLAGUES and
RAY WOLLNEY,

    Plaintiffs,

vs.

PHILLIP FROST, M.D., et al.,

    Defendants.

## MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 12(b)(b), Fed. R. Civ. P., defendant Dr. Phillip Frost ("Dr. Frost") requests dismissal of plaintiffs' Complaint. As demonstrated herein, plaintiffs cannot state a claim for relief against Dr. Frost under Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (hereinafter "Section 16(b)"), for two reasons.  First, this action is indisputably time-barred under the plain terms of Section 16(b), which unambiguously mandates that "no such suit shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b). According to the allegations of the Complaint and its attached exhibits, the alleged profits in issue were all realized on January 31, 2015. However, this action was not brought until September 6, 2017 [ECF No. 1], well more than two years after January 31, 2015.  Thus, this suit is time-barred on the face of the Complaint and must be dismissed.  Second, even if this suit was not time-barred (and it plainly is time-barred), the challenged transactions fit squarely within the exemption provided by SEC-promulgated Rule 16b-3(e). 17 C.F.R. § 240.16b-3(e).

PRELIMINARY STATEMENT

This is a purported derivative action pursuant to Section 16(b) seeking short-swing profits allegedly earned by Dr. Frost on supposed purchases and sales of the common stock of nominal defendant OPKO Health, Inc. ("OPKO"). In reality, this is a "strike" suit against one of the philanthropic pillars[1] of the South Florida community instigated and brought by professional, serial Section 16(b) plaintiffs, John A. Olagues and Ray Wollney.[2] It is a case study in the "danger of [securities litigation] vexatiousness." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 739 (1975). Even though "by objective standards [plaintiffs' claim] may have very little chance of success at trial [it] has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment" *Id.* at 740. To obviate this "vexatious litigation" danger and in order to avoid the unnecessary consumption of scarce judicial resources, the Court must dismiss this case with prejudice at this early juncture because it is time-barred on the face of the Complaint and, alternatively, the challenged transactions were fully approved in advance by OPKO's Board of Directors and, thus, are exempt under SEC-promulgated Rule 16b-3(e).

---

[1] Pursuant to Fed. R. Evid. 201(b)(2), the Court can take judicial notice that Dr. Frost and his wife have endowed the University of Miami's School of Music; made a recent $100 million gift to the University of Miami creating the Frost Institute for Science and Engineering; and contributed $45 million to Miami-Dade's new Patricia & Phillip Frost Museum of Science.

[2] Olagues has filed similar lawsuits against Carl Icahn (2d Cir. Case Nos. 16-1255, 16-1259 and 16-1261); Robert Lawler (W.D. Okla. Case No. 5:16-CV-01391); and Susan Decker (N.D. Cal. Case No. 5:07-CV-02686). Olagues has also apparently sued JP Morgan Chase CEO James Dimon (S.D.N.Y. Case No. 1:14-CV-04872); the Marin District Attorney (N.D. Cal. Case No. 4:14-CV-00818); Terry Semel (the former CEO of Yahoo) (9th Cir. Case No. 07-15202); and Arnold Schwarzenegger (E.D. Cal. Case No. 2:07-CV-01182). Both Wollney and Olagues have filed lawsuits against Jerome Peribere et al. (W.D.N.C. Case No. 3:17-CV-00068); Michael Krimbill, et al. (N.D. Okla. Case No. 4:16-CV-00748); Perceptive Advisers LLC et al. (S.D.N.Y. Case No. 1:15-CV-01190); and Michael Elich, et al. (W.D. Wash. Case No. 3:16-CV-05924). Olagues' recent Section 16(b) suits against Carl Icahn were dismissed by the district court and the Second Circuit affirmed that dismissal. *Olagues v. Icahn*, 866 F.3d 70 (2d Cir. 2017).

BACKGROUND FACTS[3]

The Parties

Although not alleged in the Complaint, plaintiffs claim to be stockholders of OPKO. According to plaintiffs, OPKO is a corporation whose stock trades on the New York Stock Exchange.[4] Dr. Frost is an officer, the CEO, and Chairman of OPKO.

The Challenged Transactions

Plaintiffs base their purported Section 16(b) claim on Dr. Frost's surrender of OPKO stock to OPKO in order to satisfy his obligation to pay the exercise price of certain warrants upon the exercise of each warrant on January 31, 2015. (Complaint ¶¶ VIII-IX). The SEC Form 4 which reported Dr. Frost's surrender of that stock on January 31, 2015, was filed with the SEC

---

[3] When deciding a motion to dismiss a federal securities law claim, courts "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, in analyzing a motion to dismiss a federal securities law claim, "'a court may consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC and (2) are actually filed with the SEC.'" *Malin v. Ivax Corp.*, 17 F. Supp. 2d 1345 (S.D. Fla. 1998) (quoting *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996)); *see also FindWhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1297 n.15 (11th Cir. 2011) ("We are permitted to review the Defendants' SEC filings ourselves in evaluating the sufficiency of the Plaintiffs' allegations"). Accordingly, documents referenced in or central to a complaint, and matters judicially noticed, will be considered when deciding a motion to dismiss. *E.g., In re Checking Account Overdraft Lit.*, 797 F. Supp. 2d 1323, 1327 (S.D. Fla. 2011) (citation omitted). Here, plaintiffs attached SEC-filed Form 4s to their Complaint. Plaintiffs also referenced their statutorily required pre-suit demand, and OPKO's response, in paragraph XII of their Complaint. That demand and response were filed with and are part of this Court's records in a now dismissed lawsuit that was previously filed by plaintiffs against Dr. Frost. *See Olagues v. Frost*, U.S. District Court, Southern District of Florida, Case No. 17-20287-CIV-JEM, at ECF Nos. 18-1, 18-2. Thus, consideration of the documents attached to the Complaint, as well as the pre-suit demand and response, at this motion to dismiss stage is appropriate and warranted.

[4] OPKO's stock actually trades on the NASDAQ exchange; however, that fact is not material to the disposition of this motion to dismiss.

on February 2, 2015. (*Id*. & Ex. 3).[5] According to the Complaint, the "matching" of this surrender of OPKO stock on January 31, 2015 with alleged purchases of OPKO stock between September 23 and October 6, 2014, were "dispositions" yielding alleged "profits" of $3,190,254. (*Id*. ¶¶ X, XII & Ex. 1). These "dispositions," the Complaint asserts, occurred within six months of each other and thus were realized "short-swing" profits within the meaning of Section 16(b) that must be disgorged by Dr. Frost to OPKO. (*Id*. ¶¶ VII-IX).

Shareholder Demand

Plaintiffs requested, by letter dated September 26, 2016, that within sixty days OPKO demand "recovery of the $3,190,254 of total profits from Dr. Frost, or if necessary sue for disgorgement of these profits" under Section 16(b). A copy of this letter, which is referred to in paragraph XII of the Complaint, is attached hereto as Exhibit A. OPKO responded by a letter, dated November 17, 2016, which explained why OPKO concluded the subject transactions were "exempt from Section 16(b) by virtue of compliance with [SEC promulgated] Rule 16b-3(e)." According to OPKO's response, it saw "no basis in law or regulation that gives the Company, or any shareholder, any colorable claim to seek recovery of any amounts related" to the transactions now the subject of this lawsuit. A copy of OPKO's letter, which is alluded to in paragraph XII of the Complaint, is attached hereto as Exhibit B.

Plaintiffs' Suits Against Dr. Frost

On January 23, 2017, plaintiffs filed a first action against Dr. Frost seeking recovery of alleged "short-swing" profits. *See Olagues v. Frost*, U.S. District Court, Southern District of Florida, Case No. 17-20287-CIV-JEM. On August 28, 2017, that case was dismissed by the

---

[5] In addition to being attached to the Complaint, the SEC-filed Form 4 is also available at https://www.sec.gov/Archives/edgar/data/1380896/000120919115008081/xslF345X02/doc4.xml.

Court because a joint scheduling report was not filed. On September 6, 2017, plaintiffs filed this second action against Dr. Frost.

ARGUMENT

Section 16(b) requires publicly traded company insiders[6] to return any profits made from the purchase and sale of company stock if both transactions occur within a six-month period. However, Congress set an absolute time-bar which prohibits any Section 16(b) suit from being brought more than two years after the date the profit was realized. 15 U.S.C. § 78p(b) ("no such suit shall be brought more than two years after the date such profit was realized"). Also, Congress in enacting Section 16(b) empowered the SEC to promulgate rules and regulations exempting transactions not comprehended to be within the statute's purpose. Here, as a dispositive threshold matter, this suit must be dismissed with prejudice because it is plainly time-barred on the face of the Complaint. Alternatively, this suit must be dismissed because the challenged transactions were fully approved in advance by OPKO's Board of Directors and, thus, are exempt under SEC-promulgated Rule 16b-3(e). On either basis, dismissal with prejudice is required.

I. **This suit is time-barred under the mandatory terms of 15 U.S.C. § 78p(b) because it was brought on September 6, 2017, more than two years after the claimed profits were allegedly realized on January 31, 2015.**

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred." *E.g., Gonsalvez v. Celebrity Cruises Inc*., 750 F.3d 1195, 1197 (11th Cir. 2013). Here, it is indisputable from the face of the Complaint that this suit is time-barred under the plain and unambiguous terms of Section 16(b).

---

[6] There is no dispute Dr. Frost is a company insider within the meaning of Section 16(b).

Section 16(b) "imposes liability without fault <u>but only</u> within its narrowly drawn limits." *E.g., Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 321 (2d Cir. 1998) (citing *Foremost-McKesson, Inc. v. Provident Secs. Co.*, 423 U.S. 232, 251 (1976)) (emphasis added). Section 16(b)'s narrowly drawn limits include a two-year time-bar which mandates that "no such suit shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b).  This two-year time-bar is unequivocal, unambiguous, mandatory, and must be enforced. The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002) (collecting cases); *accord United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said.").

Here, according to the allegations of the Complaint and its attached exhibits, the alleged "short-swing" profits in issue were all realized on January 31, 2015. Moreover, the alleged dispositions in question were all timely reported on a SEC Form 4 that was filed with the SEC on February 2, 2015.  However, this action was not filed until September 6, 2017 [ECF No. 1], well more than two years after the alleged "short-swing" profits were realized on January 31, 2015. Section 16(b) is crystal clear that "no such suit shall be brought more than two years after the date such profit was realized." 15 U.S.C. § 78p(b). The purpose of such statutes is to create an absolute bar on a defendant's temporal liability, and claims that are so barred should be dismissed at the pleading stage. *E.g., Albers v. Commonwealth Capital Corp.*, 2017 WL

2779906, at *11 (M.D. Fla. June 27, 2017) (collecting cases) (granting motion to dismiss untimely securities claims with prejudice). Thus, this case must be dismissed with prejudice.

Furthermore, plaintiffs' prior suit against Dr. Frost (which was dismissed before this instant action was filed) is irrelevant and has no bearing on the fact that <u>this</u> action is time-barred. Dismissal of a complaint, without prejudice, <u>does not allow</u> a later complaint to be filed outside the statute of limitations. *E.g., Jackson v. Hall County Gov't*, 568 F. App'x 676, 679 (11th Cir. June 4, 2014) (citation omitted). "The filing of a complaint <u>does not toll</u> a statute of limitations when that complaint is subsequently dismissed without prejudice because the dismissal has the effect of placing the parties in a position as if the suit had never been filed." *E.g., Johnson v. Florida Dep't of Health/Martin County Health Dep't*, No. 12-80289-CIV, 2012 WL 6061770, at *2 (S.D. Fla. Dec. 6, 2012) (collecting cases) (emphasis added). Accordingly, this suit is time-barred on the face of the Complaint and must be dismissed with prejudice. *E.g., Gonsalvez*, 750 F.3d at 1197.

> **II.     This suit must be dismissed because the challenged transactions were fully approved in advance by OPKO's Board of Directors and, thus, are exempt under SEC-promulgated Rule 16b-3(e).**

Even if this suit was not time-barred (and it is time-barred as a threshold dispositive matter), this suit must be dismissed for a separate reason. The challenged transactions were fully approved in advance by OPKO's Board of Directors. Thus, they are <u>exempt</u> under SEC-promulgated Rule 16b-3(e).

Rule 16b-3(e) was promulgated by the SEC as authorized by Section 16(b). The Rule provides:

> Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, **shall be exempt**, provided that the terms of such disposition are

7
HOMER BONNER JACOBS
1200 Four Seasons Tower • 1441 Brickell Avenue • Miami Florida 33131
Phone: (305) 350-5100

>approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.

17 C.F.R. § 240.16b-3(e) (emphasis added). Sub-paragraph (d)(1) exempts transactions that are "approved by the board of directors of the issuer…." 17 C.F.R. § 240.16b-3(d)(1).

According to paragraphs IX and X of the Complaint and its exhibits, the "dispositions" in issue here consisted entirely of the surrender to OPKO of 906,146 shares of OPKO stock by Dr. Frost in order to satisfy the obligation to pay the exercise price of certain OPKO-issued warrants. However, as plaintiffs acknowledge and as OPKO's response to plaintiffs' pre-suit demand letter explained (Exhibit B hereto), OPKO's Board of Directors (the "Board") adopted resolutions approving the issuance of those warrants, which contain specific provisions related to the net exercise of the warrants. The resolutions approving the issuance of the warrants were approved by the Board well in advance of the subject transactions. For these reasons, the subject transactions are exempt from Section 16(b), and Dr. Frost has no statutory liability.

To try to get around the admitted fact that Dr. Frost merely surrendered OPKO shares to satisfy the exercise price for previously granted warrants issued pursuant to prior Board resolutions, plaintiffs complain that the warrants were "exercised 2 years prior to their expiration at the sole discretion of Dr. Frost." (Complaint ¶ X). According to plaintiffs, this discretion, coupled with the fact that OPKO was required to accept the warrant exercises, rendered the subject transactions "comprehended within the purpose" of Section 16(b) and cannot be made exempt from Section 16(b). (*Id.*).

This argument finds no support in the plain language of Rule 16b-3(e), subsequent SEC interpretation, case law, or the commentators. Indeed, in its 1996 release accompanying the adoption of Rule 16b-3(e) (Release No. 34-37260), the SEC stated that "[a] note has been added to the new rule to clarify that if the terms of a subsequent transaction are provided for in the

transaction as initially approved, the subsequent transaction does not require further specific approval." *See* https://www.sec.gov/rules/final/37260a.txt.  Note 3 to Rule 16b-3 in relevant part states: "Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall <u>not</u> require further specific approval." 17 C.F.R. § 240.16b-3, n.3 (emphasis added).

The securities-specific treatises are in accord. Arnold S. Jacobs' treatise is illustrative. In describing Note 3, Jacobs' treatise states that "when the terms of the award as approved provide for a subsequent participant-directed election (in this case, the Insider paying the applicable exercise price in stock rather than cash), that election is <u>exempt without further condition</u> if effected pursuant to those terms." Arnold S. Jacobs, SECTION 16 OF THE SECURITIES EXCHANGE ACT, 3-465, § 3.75 (July 2002) (emphasis added).

The authorities are uniformly clear: dispositions of stock to an issuer to pay the exercise price of a warrant or option are exempt from Section 16(b) if the relevant terms are approved in advance. That is the case here; thus, there is no liability.

<u>CONCLUSION</u>

For the foregoing reasons, the Complaint against Dr. Frost must be dismissed with prejudice in its entirety.

Dated:  December 4, 2017.                              Respectfully submitted:

**HOMER BONNER JACOBS**

*Attorneys for Dr. Phillip Frost*
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Phone:  (305) 350-5139
Fax:  (305) 982-0063


By:  /s/ Peter W. Homer
         Peter W. Homer
         Email:  phomer@homerbonner.com
         Florida Bar No: 291250

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 4, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Kevin C. Schoenberger
201 St. Charles Avenue
Suite 2422
New Orleans, LA 70170
Email: kcschoenberger@gmail.com

*Attorney for Plaintiffs*

Tracy A. Nichols
Holland & Knight, LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Phone: (305) 789-7717
Fax: (305) 789-7799
Email: tracy.nichols@hklaw.com

*Attorney for Opko Health, Inc.*

W. Conrad Willkomm
Law Office of Conrad Willkomm
3201 Tamiami Trail
Second Floor
Naples, FL 34103
Email: conrad@swfloridalaw.com

*Attorney for Plaintiffs*

                                       /s/ Peter W. Homer
                                       Peter W. Homer