UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO. 17-23381-CIV-WILLIAMS-TORRES

JOHN A. OLAGUES and  \*
RAY WOLLNEY,
                                      \*

      Plaintiffs,
                                      \*

VERSUS
                                      \*

PHILLIP FROST, M.D., ET AL,
                                      \*

      Defendants
\* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Plaintiffs, John A. Olagues and Ray Wollney, through undersigned counsel, submit this Memorandum in opposition to the Motion to Dismiss filed by defendant, Phillip Frost, M.D. ("Dr. Frost").

I.    **FACTUAL BACKGROUND**

    A.    **Basis of the Case:**

Dr. Frost is the Chief Executive Officer and Chairman of OPKO Health, Inc. ("OPKO"), which is a publicly traded stock. He is the beneficial owner of more than ten (10%) percent of OPKO's stock. Therefore, he is an insider within the meaning of 15 USC §78.

Dr. Frost purchased more than 900,000 shares in OPKO in September through November, 2014. The average purchase price of these shares was $8.30 per share.[1] In 2007, Dr. Frost acquired eXegenics, Inc. warrants as part of a merger of Froptix Corporation into eXegenics, Inc., the predecessor of OPKO.[2] Dr. Frost was an insider of Froptix at the time of the merger. The warrants had various exercise prices ranging from $.02 to $1.04. The warrants did not expire until 2017.

On January 31, 2015, Dr. Frost exercised these warrants. Pursuant to the provisions of the warrants, Dr. Frost had the choice of exercising them by either paying cash for the exercise price, or by tendering OPKO stock to the company according to a formula based on the market value of the stock at the time of exercise. OPKO had no choice but to accept Dr. Frost's method of payment.[3] Dr. Frost chose to pay for the exercise price in stock. He directed OPKO to withhold 906,146 shares to pay for the exercise price of the warrants. The stock was trading at $11.78 per share at the time. Dr. Frost realized a profit of $3,190,254 from the matching of the 900,000 purchase with the disposition of 900,000 shares to OPKO.[4] Since this transaction was done on January 31, 2015, it means that Dr. Frost purchased OPKO shares and disposed of them within less than a six-month period. Plaintiffs state this disposition of shares matched the purchase of shares less than six months prior to this disposition.

Dr. Frost, as an insider, is assumed to possess information concerning OPKO which was

---

[1]  See SEC Form 4, attached to the Complaint as Exhibit "2."

[2]  See notes to Form 4.

[3]  See Sections 2.1 and 2.5 of an eXegenics, Inc. warrant form, attached hereto as Exhibit "A."

[4]  See SEC Form 4, attached to the Complaint as Exhibit "2."

unknown to the public. The exercise prices were fixed between $0.09 and $1.04 per share and the warrants did not expire for another two years from the time of exercise. OPKO had no discretion but to accept stock for the warrants' exercise price.

### B. History of this Litigation:

Plaintiffs filed a lawsuit identical to the case at bar in this district on January 23, 2017.[5] On April 28, 2017, Dr. Frost filed a Motion to Dismiss for Failure to State a Claim.[6] On May 18, 2017, plaintiffs filed a Memorandum in Opposition to Dr. Frost's Motion to Dismiss.[7] On August 28, 2017, while Dr. Frost's Motion to Dismiss was pending, the Judge, *sua sponte,* ordered the case dismissed without prejudice because the parties did not file a Joint Scheduling Order.[8] This dismissal was done without notice to the parties.

Olagues and Wollney promptly filed this suit on September 6, 2017. This was done at a time when south Florida was in turmoil because of the impending approach of Hurricane Irma. In short, the new suit was filed as soon as possible.

## II. LAW

### A. Limitation of Actions:

Dr. Frost argues this suit is time barred under the terms of 15 USCA §78p(b), on the ground

---

[5] *Olagues, et al v. Frost, et al,* USDC, SDFL, Case No. 1:17-cv-20287.

[6] Docket No. 18, Case No. 1:17-cv-20287.

[7] Docket No. 21, Case No. 1:17-cv-20287.

[8] Docket No. 24, Case No. 1:17-cv-20287.

it was filed more than two years after the claimed profits were realized by Dr. Frost. However, the first suit equitably tolled the statute of limitations and this suit was filed promptly thereafter. Dr. Frost was certainly on notice of the claims made by Olagues and Wollney prior to the running of the 2-year statute of limitations period. Since this statute is not a statute of repose, it is subject to equitable tolling. See *Credit Suisse Securities (USA) LLC v. Simmonds*.[9] The U.S. Supreme Court has also stated in *Holmberg v. Armbrecht*[10] that "the equitable doctrine (of tolling) is read into every federal statute of limitations."

In *Island Insteel Systems, Inc. v. Waters*,[11] the plaintiffs sued the defendant in the district of Puerto Rico within the 2-year statute of limitations provided by the law in question. That action was dismissed for lack of personal jurisdiction over the defendants, Thereafter, the plaintiffs filed suit in the Virgin Islands district court outside of the 2-year statute of limitations. The court did a survey of the law concerning the tolling of a statute of limitations when the original suit was dismissed by the court without prejudice. It held the statute of limitations is equitably tolled when three criteria were met:

1. Timely notice to the defendant in filing the first claim;

2. Lack of prejudice to the defendant in gathering evidence to defend against the second claim; and

3. Reasonable and good faith conduct by the plaintiff in prosecuting the first action and

---

[9] 132 S.Ct. 1414, 566 US 221, 182 L.Ed.2d 446 (2012).

[10] 327 US 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

[11] 296 F.3d 200 (3 Cir. 2002).

diligence in filing the second action.[12]

In the case of *In re Parmalat Securities*,[13] the plaintiff filed a securities fraud claim against the defendant. The defendant asserted the suit was not filed within two years as required by the applicable statute of limitations. The court held that the plaintiffs were entitled to equitable tolling because they had pursued their rights diligently and could not assert their rights during a pending bankruptcy proceeding. In *U.S. v. Kwai Fun Wong*,[14] the court held that equitable tolling is presumed in suits between private parties.

Olagues and Wollney were caught by surprise when the court dismissed the first case for failing to file a Joint Scheduling Order. Dr. Frost had not filed an answer to the suit. Instead, he filed a Motion to Dismiss which was pending for three months when the court ordered the dismissal. In short, there was no trial calendar to schedule while Dr. Frost's motion was pending.

The cases cited by defendant in support of his argument are inapplicable. *Jackson v. Hall County Government*[15] pertain to Rule 11 sanctions against an attorney who filed a time-barred claim. *Jackson* involved a Title VII discrimination lawsuit in which there is a strict ninety (90) day deadline involved, which he missed. *Gonsalvez v. Celebrity Cruises, Inc.*[16] involved a 90-day statute of limitations for plaintiffs to take action to vacate an arbitration award. The plaintiff simply failed to file suit within the 90-day limit.

---

[12]  At. p. 217.

[13]  493 F.Supp. 723, USDC New York (2007), *affirmed* 535 F.3d 87.

[14]  135 S.Ct. 1625, 191 L.Ed.2d 533, 83 USLW 4258 (2015).

[15]  568 F.App'x 676 (11 Cir 2014).

[16]  750 F.3d 1195 (11 Cir. 2013).

### B. Standard of Review

In *Pfeiffer v. Pricesmart, Inc.*,[17] the district court provided the Standard of Review for F.R.C.P. Rule 12(b)(6) motions:

> "In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 483 (3rd Cir. 1998). 'A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." *Id.* Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The moving party has the burden of persuasion. See *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir. 1991). 'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory, Sec. Litig.*, 114 F.3d 1410, 1426 (3rd Cir. 1997)."

Here, the Complaint alleges Dr. Frost violated the insider trading law by purchasing shares and disposing of them to OPKO within less than six months. Neither the purchases or dispositions were exempt from 16(b) via any SEC rules or regulations. These allegations are taken as true for the purposes of a Rule 12(b)(6) Motion. Defendant claims he had specific board approval, but he did not provide any evidence of such approval to dispose of shares. Therefore, plaintiffs' allegation that Dr. Frost did not have such approval is taken as true for purposes of this Motion.

### C. Insider Trading

In order to avoid the evils of insider trading, Congress passed the Securities and Exchange Act of 1933. See 15 USCA §78p(b), which provides as follows:

---

[17]   USDC Del. 2004 WL 3119780.

"**(b)   Profits from purchase and sale of security within six months**

"For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security or security-based swap agreement or a security-based swap involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

Because of the danger of corporate insiders using inside information to generate profits from short-term buying and selling of their company's stock, Congress imposed strict liability for profiting from purchases and sales made within six months of each other, and allowed SEC exemptions only for transactions not comprehended within the purpose of the statute[18]

Thereafter, the Securities & Exchange Commission ("SEC") promulgated regulations which provide a "safe harbor" for certain transactions by an insider. See 17 CFR 240.16b-3, which provides, in pertinent part, as follows:

"**(a) *General.*** A transaction between the issuer (including an employee benefit plan

---

[18]   *Magma Power Co. v. Dow Chemical Co.,* 136 F.3d 316 (2d Cir. 1998). See also *Foremost-McKesson, Inc. v. Provident Sec. Co.,* 423 U.S. 232, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976).

sponsored by the issuer) and an officer or director of the issuer that involves issuer equity securities shall be exempt from section 16(b) of the Act of the transaction satisfies the applicable conditions set forth in this section.

"...

**"(d) Acquisitions from the issuer.** Any transaction, other than a Discretionary Transaction, involving an acquisition from the issuer (including without limitation a grant or award), whether or not intended for a compensatory or other particular purpose, shall be exempt if:

> **"(1)** The transaction is approved by the board of directors of the issuer, or a committee of the board of directors that is composed solely of two or more Non-Employee Directors;
>
> **"(2)** The transaction is approved or ratified, in compliance with section 14 of the Act, by either: the affirmative votes of the holders of a majority of the securities of the issuer present, or represented, and entitled to vote at a meeting duly held in accordance with the applicable laws of the state or other jurisdiction in which the issuer is incorporated; or the written consent of the holders of a majority of the securities of the issuer entitled to vote; provided that such ratification occurs no later than the date of the next annual meeting of shareholders; or
>
> **"(3)** The issuer equity securities so acquired are held by the officer or director for a period of six months following the date of such acquisition, *provided that* this condition shall be satisfied with respect to a derivative security if at least six months elapse from the date of acquisition of the derivative security to the date of disposition of the derivative security (other than upon exercise or conversion) or its underlying equity security.

**"(e) *Dispositions to the issuer.*** Any transaction, other than a Discretionary Transaction, involving the disposition to the issuer of issuer equity securities, whether or not intended for a compensatory or other particular purpose, shall be exempt, provided that the terms of such disposition are approved in advance in the manner prescribed by either paragraph (d)(1) or paragraph (d)(2) of this section.

**"(f) *Discretionary Transactions.*** A Discretionary Transaction shall be exempt only if effected pursuant to an election made at least six months following the date of the most recent election, with respect to any plan of the issuer, that effected a Discretionary Transaction that was:

> "**(1)** An acquisition, if the transaction to be exempted would be a disposition; or
>
> "**(2)** A disposition, if the transaction to be exempted would be an acquisition.
>
> "..."

Note (3) to this Regulation provides:

> "**Note (3):**
>
> "The approval conditions of paragraphs (d)(1), (d)(2) and (e) of this section require the approval of each specific transaction, and are not satisfied by approval of a plan in its entirety except for the approval of a plan pursuant to which the terms and conditions of each transaction are fixed in advance, such as a formula plan. Where the terms of a subsequent transaction (such as the exercise price of an option, or the provision of an exercise or tax withholding right) are provided for in a transaction as initially approved pursuant to paragraphs (d)(1), (d)(2) or (e), such subsequent transaction shall not require further specific approval."

The starting point in determining whether a transaction is exempt from §16(b) is to determine whether the transaction is comprehended within the purpose of this subsection. If the transaction is comprehended within the purpose of this subsection, the transaction cannot be exempt.

In this case, Dr. Frost had a superior footing advantage over OPKO because Dr. Frost could choose when he could exercise the warrants and the manner in which he paid for them, i.e., by tendering stock or paying cash. OPKO had no choice but to accept the stock tender that was chosen by Dr. Frost. Even if the purchase of warrants were approved by the Board as the defendants, claim, that approval did not satisfy the specificity requirement to achieve an exemption via SEC Rule 16(b)-3(e).

The leading Supreme Court case concerning violations of §16(b) of the Securities and Exchange Act of 1934 is *Kern County Land Company v. Occidental Petroleum Corporation*,[19] in

---

[19]   411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed2d 503 (1973).

which the petitioner sought to recover by suit a profit of some $19,000,000 which the respondent had made in a merger between Kern County Land Company and Tenneco Petroleum Company. In discussing the statute, the Supreme Court noted:

> "The statute requires the inside, short-swing trader to disgorge all profits realized on all 'purchases' and 'sales' within a specified time period, without proof of actual abuse of insider information, and without proof of intent to profit on the basis of this such information... Thus, '(I)n interpreting the terms of 'purchase' and 'sale,' courts have properly asked whether the particular type of transaction involved is one that gives rise to speculative abuse."[20]

In ruling for the defendant, Occidental Petroleum, the court held that Occidental had no choice with respect to the future of the shares it acquired. Contrast the position of Occidental Petroleum with Dr. Frost. Dr. Frost had complete discretion of how to handle the transaction. OPKO had no choice but to accept Dr. Frost's direction.

In *Analytical Surveys, Inc. v. Tonga Partners, L.P., et al*,[21] Analytical Surveys, Inc. ("ASI") filed suit against three defendants seeking a disgorgement of profit pursuant to §16(b). ASI had issued a convertible note to Tonga. The note provided that at maturity, Tonga had the option to convert the principal balance into shares of ASI, but could, if it wished, insist on payment in full in cash. Tonga then converted the outstanding principal of this note into stock in ASI. Within six months, it sold the stock for a profit on the open market. These facts sound very similar to the case at bar.

In citing *Kern County,* the *ASI* court held that *Kern County* defense to §16(b) only applied "when the transaction at issue is 'an (1) involuntary transaction by an insider; (2) having no access

---

[20]   At pp. 1744 and 594.

[21]   684 F.3d 36 (2d Cir. 2012).

to insider information."[22]  The court held for the plaintiff.

### D. Personal Attacks:

The defendant's *ad hominem* attack against Olagues is without merit. It is merely an attempt to deflect attention away from the merits of this case. The case of *Blue Chip Stamps v. Manor Drug Store*[23] (cited by defendant) merely requires that plaintiff be a shareholder to have standing. Neither Olagues nor Wollney made any vexatious filings.

### III. CONCLUSION

The court should deny the defendant's Motion to Dismiss.

Dated: December 18, 2017                    Respectfully submitted,

                                    **LAW OFFICE OF KEVIN C. SCHOENBERGER**
By:   */s/ Kevin C. Schoenberger*
       **KEVIN C. SCHOENBERGER (Bar No. 11813)**
       Attorney for the Plaintiffs
       201 St. Charles Avenue, Suite 2422 - Place St. Charles
       New Orleans, Louisiana 70170
       Telephone: (504) 525-1143
       Facsimile: (504) 587-0901
       Email: kcschoenberger@gmail.com

       **LAW OFFICE OF CONRAD WILLKOMM, PA**
By:   */s/ W. Conrad Willkomm*
       **W. CONRAD WILLKOMM (Bar No. 0697338)**
       3201 Tamiami Trail North - 2nd Floor
       Naples, Florida 34103
       Telephone: (239) 262-5303
       Facsimile: (239) 262-6030
       Email: conrad@swfloridalaw.com

---

[22]    At p. 45.

[23]    421 US 723, 95 S.Ct. 1917.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| JOHN A. OLAGUES, ET AL | * | CIVIL ACTION |
| VERSUS | * | NO. 1:17-CV-20287-JEM |
| PHILLIP Dr. Frost, M.D., ET AL | * | |

* * * * * * * * * * * * *

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 18, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF electronic document filing system which will send a notice of electronic filing to the following:

Tracy A. Nichols, Esq.
Holland & Knight, LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 789-7717
Facsimile: (305) 789-7799
tracy.nichols@hklaw.com

*Attorney for OPKO Health, Inc.*

Peter W. Homer, Esq.
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 350-5139
Facsimile: (305) 982-0063
phomer@homerbonner.com

*Attorneys for Phillip Frost, M.D.*


/s/ W. Conrad Willkomm
**W. CONRAD WILLKOMM**